# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:19-CR-264-3-SDJ |
| | § | |
| SCOTT PERRAS | § | |

## ORDER AND MEMORANDUM OPINION ON GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER

Before the Court is the Government's Motion to Revoke Release Order, requesting that the Court revoke the magistrate court's order releasing Defendant Scott Perras pending trial. (Dkt. #67). Defendant filed a Response to the Government's Motion (Dkt. #95) and the Court held a hearing on the Motion. The Court, having considered the Government's Motion, the Defendant's response, the record, and the applicable law, **DENIES** the Motion and the relief requested.

## BACKGROUND

Scott Perras is charged in two counts of an indictment returned by a Grand Jury sitting in the Eastern District of Texas. The first count charges Perras with a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, possession with the intent to distribute and distribution of controlled substances resulting in death, and aiding and abetting. The second count against Perras charges violations of the same statutes, but alleges conduct occurring over a broader timeframe, involving more defendants, and does not allege the death of any individual. Perras pled not guilty to both counts of the indictment.

On November 4, 2019, the magistrate court held a hearing to determine whether Perras should be detained or released pending trial. The Government urged the court to detain Perras, arguing that he would be a danger to the safety of others and the community if released. Perras, through counsel, argued that a combination of conditions could be imposed on his release that

would reasonably assure the safety of others and the community, and that therefore he need not be detained pending trial. The Government presented a witness, investigating detective David Roach, and conducted cross-examination of Perras's witnesses. Perras presented two witnesses, his girlfriend Diana Chavez and his father David Perras. Perras's counsel also cross-examined Detective Roach.

The magistrate court ruled that Perras should be released pending trial under a set of conditions recommended by the United States Probation Office for the Eastern District of Texas.[1] The Government stated that it would not object to the conditions imposed by the magistrate court should Perras be released, but stated that it would appeal to this Court the magistrate court's ruling that Perras should not be detained pending trial. The Government made an oral motion to the magistrate court for a temporary stay of its ruling that Perras should be released, pending the Government's appeal to this Court. The oral motion was granted by the magistrate court, and Perras remains in detention.

**LEGAL STANDARDS**

A court must order a defendant be released or detained pending trial. 18 U.S.C. § 3141(a). The applicable procedure regarding the release or detention of a defendant pending trial is set forth in 18 U.S.C. § 3142. *United States v. Trosper*, 809 F.2d 1107, 1108 (5th Cir. 1987). The statute requires the court to determine whether any "condition or combination of conditions will

---

[1] The Pretrial Services Report recommends that Perras be released on personal recognizance under the following conditions. During his release pending trial Perras must (1) be under supervision of the Pretrial Services Office and must report to it; (2) continue or actively seek employment; (3) surrender his passport; (4) not obtain a passport or any other international travel document; (5) avoid all direct or indirect contact and communication with any victims or witnesses in the case, including co-defendants; (6) participate in mental health assessment and treatment under the supervision of the probation officer and adhere to its rules; (7) not possess a firearm, destructive device, or other weapon; (8) not use alcohol excessively; (9) not use or possess drugs unless prescribed; (10) participate in prohibited substance testing; (11) participate in substance abuse therapy under the supervision of the probation officer and adhere to its rules; (12) report every contact with law enforcement to the probation officer; and (13) take mental health medication as prescribed.

reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Under the statute, "[f]or pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). "Assurance of trial presence must be proven by the preponderance of evidence and assurance of community safety by clear and convincing evidence." *United States v. Jackson*, 845 F.2d 1262, 1264 n.3 (5th Cir. 1988).

To make that determination, the statute requires the court to hold a hearing in some cases. 18 U.S.C. § 3142(f). In cases involving an offense subject to a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. 801 *et seq.*, upon motion of the Government, the court must hold such a hearing. 18 U.S.C. § 3142(f)(1)(C); *Rueben*, 974 F.2d at 581 n.2. At the hearing, the rules governing admissibility of evidence do not apply to the presentation and consideration of information. 18 U.S.C. § 3142(f)(2); *see Trosper*, 809 F.2d at 1111 ("This testimony is, of course, hearsay, but is admissible in a detention hearing.").

A rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community" arises in some cases. 18 U.S.C. § 3142(e). The rebuttable presumption arises upon a finding of probable cause to believe that the defendant committed an offense subject to a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. 801 *et seq.* 18 U.S.C. § 3142(e)(3)(A); *see also Rueben*, 974 F.2d at 586 (citing 18 U.S.C. § 3142(e)). Probable cause exists when offenses under the Controlled Substances Act are charged in an indictment. *See, e.g.*, *Trosper*, 809 F.2d 1107 at 1110 ("[T]his court stated that the presumption against pretrial release arises when drug crimes are charged in the indictment. It is therefore clear

that the presumption was properly applied to [the defendant] upon proof that he had been indicted under the Controlled Substances Act.") (internal citations omitted).

Section 3142(e)'s rebuttable presumption shifts to the defendant "only the burden of producing rebutting evidence, not the burden of persuasion," which remains with the Government. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). If the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *United States v. Fortna*, 769 F.2d 243, 251 (5th Cir. 1985). The statute thus creates "an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Hare*, 873 F.2d at 799.

If a person is ordered released by a magistrate court, the Government may file a motion for revocation of the order with the court having original jurisdiction over the offense. 18 U.S.C. § 3145(b). In considering such a revocation motion regarding a magistrate court's pretrial detention order, the district court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release. *Fortna*, 769 F.2d at 249. The court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *Id.* at 250.

The court must consider the evidence using the factors enumerated in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . .;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

## DISCUSSION

This Court must determine whether a combination of release conditions can reasonably assure the safety of others and the community during Perras's release pending trial. Finding that the rebuttable presumption applies to this case and that the presumption has been rebutted, and having considered the factors under 18 U.S.C. § 3142(g), the Court holds that the Government has failed to prove by clear and convincing evidence that no combination of release conditions can reasonably assure the safety of others and the community during Perras's release pending trial. The Court therefore holds that Perras should be released pending trial subject to the conditions in his Order of Release.[2]

---

[2] For those cases subject to the provisions of 18 U.S.C. § 3142(e)(3), a presumption is invoked that "no condition or combination of conditions will reasonably assure the appearance of the person as required *and* the safety of the community." 18 U.S.C. § 3142(e)(3)(A) (emphasis added). The defendant, then, must present evidence tending to rebut both the presumption of flight risk and of danger. But the Government must still meet its burdens of persuasion: by preponderance of the evidence for flight risk and clear and convincing evidence for danger. *Jackson*, 845 F.2d at 1264 n.3.

Here, the Government presented "little more than the presumption to support the government's request for pretrial detention" on the grounds that Perras is a flight risk. *Id.* at 1266. In fact, the Government repeatedly disavowed any argument that Defendant Perras presents a flight risk. During the hearing before the magistrate judge, when asked for the grounds for Perras to be detained, the Government responded, "No, [flight risk] is the bases [sic] on Mr. Shewmake. As to Mr. Perras, it is danger to the community." (Transcript of Oral Argument Before Magistrate ["Tr."] at 43–44). Later during the same hearing, defense

I. Rebuttable Presumption of Detainment

The rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" applies in this case. Perras has been indicted for alleged violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2, and 21 U.S.C. § 846. Under the Controlled Substances Act, the offenses alleged under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 carry a mandatory minimum term of 20 years imprisonment and a maximum term of life imprisonment if a death is involved. *See* 21 U.S.C. § 841(b)(1)(A); *id.* § 846. The indictment provides probable cause to believe that Perras committed those offenses. *See Trosper*, 809 F.2d 1107 at 1110 ("[T]he presumption against pretrial release arises when drug crimes [under the Controlled Substances Act] are charged in the indictment."). Further, the testimony from Detective Roach supports the finding of probable cause. *See Fortna*, 769 F.2d at 252–53 (finding probable cause, in part, using the affidavit of an investigating agent). Therefore, under 18 U.S.C. § 3142(e)(3)(A), the presumption applies and Perras must produce rebutting evidence.[3]

---

counsel asked the court, "[I]s the Government going on just danger to the community for Mr. Perras," to which the court responded, "That's what [the Government] stated earlier." (Tr. at 121). The Government did not object to this characterization. Further, in both its closing argument before the magistrate court and its Motion to Revoke Release Order before this Court, the Government presented argument *only* on Perras's danger to others and the community, and made no argument that Perras presents a flight risk. In any event, "where the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial . . . the presumption contained in § 3142(e) has been rebutted." *Jackson*, 845 F.2d at 1266. As discussed herein, Perras presented substantial evidence of his family and professional ties to the locality. Because the Government made no argument about Perras's flight risk beyond applying the presumption and because Perras presented evidence sufficient to rebut the presumption and to demonstrate that he is not a flight risk, the Government has failed to show by a preponderance of the evidence that releasing Perras pending trial presents such a risk.

[3] In Perras's Response to the Government's Motion, Perras argues that this case is not subject to any rebuttable presumption. Perras recognizes that 18 U.S.C. § 3142(e) includes two separate grounds for invoking the presumption in certain cases under the Controlled Substances Act: 18 U.S.C. § 3142(e)(2) and § 3142(e)(3). Perras also recognizes that the two subsections each invoke different presumptions when different prerequisite determinations are made by the Court. Perras concludes that only § 3142(e)(2), and not § 3142(e)(3), should apply in this case and that, under that subsection, the Government fails to make

To rebut the presumption, Perras bears "only the burden of producing rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798. Perras has produced evidence sufficient to rebut the presumption. Perras produced two witnesses, his girlfriend and his father, as well as 20 character letters from friends and family. That evidence showed, among other things, that Perras has been consistently employed for at least the last five years, that he is currently in school, that he serves as a provider and caretaker for his girlfriend and her child, and that he has formed relationships of trust with his work colleagues. Perras's counsel also cross-examined Detective Roach, who confirmed that Perras is employed.

While the evidence also suggests that Perras has occasionally used marijuana for years and that Perras previously served probation for a misdemeanor theft, Perras only bears the burden of production, not of persuasion. It is clear that Perras carried his burden of producing evidence sufficient to rebut the presumption. *See, e.g.*, *United States v. Gourley*, 936 F. Supp. 412, 416 (S.D. Tex. 1996) (finding that defendants carried their burden of rebutting the presumption through "cross-examination of the government witness during the detention hearing and proffering of their own witnesses"); *cf. Rueben*, 974 F.2d at 587 (determining that defendants failed to rebut the presumption that they were a danger because they presented "absolutely no evidence whatsoever" that they would cease their "continuous[] engage[ment] in the trafficking of drugs"). The presumption, then, has been rebutted but remains as a factor to be considered in this Court's analysis. *See Fortna*, 769 F.2d at 251.

---

the requisite proof to apply the presumption. Perras is mistaken. This case clearly falls under the text of § 3142(e)(3). Neither the statute nor any case that this Court is aware of requires that the Court disregard the text of § 3142(e)(3) and limit its consideration to only § 3142(e)(2). Perras provides no argument or authority in support of that position. For these reasons, the Court declines to do so and applies the presumption under the text of § 3142(e)(3).

II.  Nature and Circumstances of the Offenses Charged

Perras's charged offenses are serious in nature. After an investigation into the death of Ryan Pearson caused by an overdose on Alprazolam and Fentanyl, Perras was indicted for possession with the intent to distribute and distribution of controlled substances resulting in death, aiding and abetting, and conspiracy to distribute and possess with the intent to distribute a controlled substance. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2; 21 U.S.C. § 846. Under the Controlled Substances Act, the charged offenses carry a mandatory minimum of 20 years imprisonment and a maximum of life imprisonment when a death is involved. *See* 21 U.S.C. § 841(b)(1)(A); 21 U.S.C. § 846. The severity of the potential sentence weighs in favor of detention. *See United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009) (finding that a 375-month potential sentence "weighs heavily in favor of detention").

But Perras's limited role in the charged offenses is a significant mitigating factor. The evidence produced by both parties suggests that Perras was an occasional drug user, not a leader, distributor, or member of any drug organization. In this regard, Detective Roach confirmed that Perras's connection to any drug organization was limited to "purchas[ing] narcotics for his own consumption" in "smaller user amounts." (Tr. at 55). In short, rather than demonstrating any substantial involvement in a drug organization, the evidence of Perras's history shows only that he occasionally purchased small quantities of drugs for personal use.

Similarly, Perras's role in the events leading to Ryan Pearson's death was limited to sending a few text messages facilitating a connection between a dealer known to Perras, Ben Westin, and Perras's friend Pearson. Specifically, Perras exchanged several text messages with Westin, who had previously sold drugs to Perras. In the messages, Perras introduces Westin to Pearson so that Pearson can purchase drugs from Westin. As Detective Roach acknowledged,

Perras's role was therefore limited to connecting Westin and Pearson, albeit for the purpose of facilitating Pearson's drug purchase from Westin. The results were tragic. As charged in the indictment, Perras's actions set in motion a chain of events that ultimately resulted in Pearson's death from an overdose on the drugs Westin sold him. However, notwithstanding the deadly consequences of Perras's actions connecting Westin and Pearson, it is significant that Perras did not sell any drugs to Pearson or profit from Pearson's drug purchase, nor did Perras have any role in any drug organization involved in Pearson's death.

    III.    Weight of the Evidence

The Court must consider the weight of the evidence against Perras, but "courts have found this factor to be of least importance in the detention determination." *Stanford*, 630 F. Supp. 2d at 755 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F. Supp. 385, 393 (W.D. La. 1997)).

The Government asserts strong evidence that Perras put Pearson in touch with Westin. Specifically, investigators obtained text messages sent between the cell phones of Perras, Pearson, and Westin regarding Pearson's interest in purchasing drugs and, later, his death as a result of taking those drugs. Investigators also obtained text messages sent after Pearson's death between Perras and Westin alluding to Perras himself getting drugs from Westin. At no point in either hearing or in Perras's briefing did Perras contest that he put Pearson in touch with Westin.

    IV.    History and Characteristics of the Defendant

Perras produced significant evidence of his non-dangerous character, stability, and ties to the community. He lives in McKinney, Texas in a leased home with his girlfriend of five years, her ten-year-old daughter, his sister, and her boyfriend. He has been continuously employed as an IT specialist for at least five years, currently at Netrio and formerly at AT&T, and also runs his

own freelance website design company. He provides for his girlfriend, her daughter, and his sister by helping pay bills and by acting as a stepfather to his girlfriend's young daughter. When he is not working, he attends IT classes at a local community college.

Although Perras has suffered from anxiety and depression, he has continually seen a psychiatrist to treat these issues and has received a prescription for anti-anxiety medication. Perras has also taken some drugs not prescribed to him, including marijuana, but he has no previous drug charges on his criminal record. Perras was arrested for misdemeanor theft of property in 2010. He served a 20-month probation term without issue and has not had any criminal history since that time.

Taken together, Perras's history and characteristics show that a combination of conditions, including electronic monitoring, mandatory mental health and drug testing and treatment, and restricted contact with his co-defendants, can reasonably assure that he poses no danger to others or the community.

V. Nature and Seriousness of the Danger Posed by the Defendant

The Government contends that Perras's involvement in a drug crime that resulted in death and that carries a heavy punishment demonstrates his dangerousness. The Government further argues that Perras's history as a drug user and his willingness to stay in contact with dealers even after Pearson's death demonstrates a disregard for the seriousness of his alleged offenses. The Government also notes that Perras was untruthful with authorities about his history of drug use, demonstrating an untrustworthy nature that will undermine his ability to adhere to any conditions of release.

Although the Government's concerns are legitimate, it has not presented clear and convincing evidence that no combination of release conditions can reasonably assure the safety of

others and the community if Perras is released. To the contrary, the evidence shows that Perras's history and characteristics, as well as his limited role in the offenses at issue, do not suggest that he will present a danger to others or the community, and that a combination of conditions imposed on his release, subjecting him to close supervision, treatment, and scrutiny, will further ensure that he presents no danger to others.

To begin with, and as the Government acknowledges, Perras is not a part of any drug organization. Rather, he has been an occasional drug user. Perras has been steadily employed as an IT specialist and is in a committed relationship with his girlfriend, living with her and her daughter. In addition to providing for his girlfriend and her daughter, Perras has provided financial assistance to his sister and helped raise his niece. On his release, Perras's father will act as his third-party custodian. Perras will live with his father and stepmother, who have close relationships with Perras and have expressed willingness to support and supervise him. Both are employed, but have flexible hours that will aid supervision, and neither have been convicted of a crime. Perras will live in their Granbury, Texas home, two hours away from his current job and his leased home. This distance will allow Perras to maintain his job and his relationships of support, including his girlfriend and her daughter, but remove him from the circumstances of his alleged crime.

Perras will be subject to all of the conditions on his release approved by the magistrate court, and he will also be subject to electronic monitoring at all times. He will be under the supervision of a probation officer in the Pretrial Services Office, must surrender his passport and any other international travel document, and is required to restrict himself to the State of Texas. Perras must attend mental health and drug assessment and treatment programs, including random drug testing. These and the other conditions of Perras's release, which are stated in full in the

Court's Order Granting Release, ensure that releasing Perras pending trial will not result in a danger to others or the community.

For all of these reasons, the Government has failed to carry its burden of persuasion by clear and convincing evidence that no combination of conditions of release would prevent Perras from being a danger to others and the community pending trial.

## CONCLUSION

It is therefore **ORDERED** that the Government's Motion to Revoke Release Order (Dkt. #67) is hereby **DENIED**.

**So ORDERED and SIGNED this 18th day of November, 2019.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE